Parker QUILLEN and Joan Quillen,
Plaintiffs-Appellants,

v.

The PLANNING AND ZONING COM-
MISSION OF the CITY OF ASPEN;
Olof Hedstrom; Perry Harvey; Jas-
mine Tygre; Lee Pardee; Roger Hunt;
Al Bloomquist, as members thereof act-
ing in an official capacity; the City of
Aspen; the Council of the City of As-
pen; Herman Edel; John Van Ness;
Michael Behrendt; Tom Isaac; Susan
Michael; George Parry and Charles T.
Collins, as members thereof acting in
an official capacity, Defendants-Appel-
lees.

No. 82CA1300.

Colorado Court of Appeals,
Div. III.

Oct. 18, 1984.

As Modified on Denial of Rehearing
Dec. 6, 1984.

Certiorari Denied March 11, 1985.

Sachs, Klein & Seigle, P.C., Jon David
Seigle, James H. Delman, Aspen, for plain-
tiffs-appellants.

The Office of the City Atty. of Aspen,
Paul J. Taddune, Gary S. Esary, Aspen, for
defendants-appellees.

KELLY, Judge.

Parker Quillen and Joan Quillen, plain-
tiffs, appeal from the trial court's determi-
nation that the Aspen Planning and Zoning
Commission neither exceeded its jurisdic-
tion nor abused its discretion in denying
their application for a lot line adjustment.
We reverse.

Quillens purchased two adjoining parcels
of land in the Red Butte Subdivision of
Aspen, each of which contained a single
family residence. They applied to the Plan-
ning Commission for a lot line adjustment
to decrease the size of one lot and to in-
crease the size of the other. Their plan
was to divide the newly expanded lot and
later to build a house thereon. The lot line

adjustment sought by the Quillens was necessary so that the three proposed lots would comply with minimum square footage requirements.

To obtain a lot line adjustment, the Aspen Municipal Code requires applications to be submitted first to the Planning Commission for consideration and recommendation to the City Council concerning the conceptual acceptability of the proposed change under the Code requirements. After City Council approval, applications are to be returned to the Planning Commission for preliminary plat approval and then for final plat approval. The preliminary plat approval stage gives rise to this controversy, and there is no provision in the Municipal Code for City Council review at this stage of the subdivision proceedings.

The Planning Commission, upon the Quillens' initial application, found that lot line adjustments had been used historically to reconcile platting errors or to adjust a specific hardship, neither of which had been shown here. The Planning Commission further found that the Quillens' ultimate plan would effectively create three lots for development rather than two, thereby circumventing the intent of the City's Growth Management Policy Plan. Concluding that this result would be conceptually inconsistent with the intent of the Aspen subdivision regulation "[t]o safeguard the interest of the public and to otherwise promote the health, safety and general welfare of the residents of the City of Aspen," the Planning Commission recommended denial of the Quillens' application.

Notwithstanding the Planning Commission's conclusions, the City Council decided that all written requirements of the Aspen subdivision regulations had been met. Stating also that it wished to resolve a related lawsuit which the Quillens had filed alleging misrepresentation by certain city officials, the City Council approved the Quillens' conceptual presentation, returned it to the Planning Commission, and directed the Planning Commission to approve the preliminary plat "upon sufficient demonstration that the application complies with existing subdivision regulations."

The Planning Commission, after concluding that Aspen Municipal Code § 20–5(d) granted it authority to re-evaluate the conceptual compatibility of the Quillens' application at this stage of the proceedings, denied preliminary plat approval for reasons similar to those articulated in its conceptual recommendation to the City Council. It also found that the proposed change would weaken the purpose and purport of Chapter 20 of the Code concerning regulation of subdivision development by disrupting the current subdivision plan which had been relied on by existing Red Butte homeowners, who had objected to any changes or modifications.

The Quillens petitioned for C.R.C.P. 106 relief. The trial court upheld the Planning Commission, finding, on several grounds, that the Commission had not exceeded its jurisdiction or abused its discretion in denying approval.

On appeal, the Quillens assert that the Planning Commission is without authority to reconsider the general conceptual compatibility of their plan at the preliminary plat approval stage. The Planning Commission continues to look for its authority to reconsider conceptual compatibility to the provisions of Aspen Municipal Code § 20–5(d), which provides, in relevant part:

"No structure shall be constructed ... on any parcel of land within a subdivision approved pursuant to this chapter except where such structure is to be constructed upon a lot separately designated within the plat of such approved subdivision. The lot lines established in such approved subdivision shall not be altered by conveyance of a part of such lots, *nor shall any part of any lot be joined with a part of any other lot for conveyance or construction unless and until written application has been made to and approved by the planning commission after finding that the general purpose and purport of this chapter* [20] *shall not be weakened by such change.*" (emphasis added)

 The reliance of the Planning Commission on § 20-5(d) is misplaced. The language of that section shows it to be a general prohibition clause. It cannot be construed to repose in the Planning Commission the authority to overrule the decision of the City Council made pursuant to Aspen City Code § 20-10(d) which states unambiguously that:

"Within thirty (30) days of receipt of the Planning Commission recommendation and at a regular meeting, the City Council shall approve, disapprove, or approve with modifications the conceptual presentation."

Since § 20-5(d) is general in nature and § 20-10(d) is a specific provision, the latter is controlling over the former. *City & County of Denver v. Bigelow,* 113 Colo. 170, 155 P.2d 998 (1945).

 Moreover, Aspen Municipal Code § 20-12 details the material to be included in the preliminary plat plan and states that the "contents of the preliminary plat shall be of sufficient detail to determine whether the proposed subdivision will meet the design standards of this chapter." There is no language which authorizes another inquiry by the Planning Commission into the conceptual consistency of the proposed development with the intent of the subdivision regulations. Although Aspen Municipal Code § 20-10(f) provides that both the Planning Commission and the City Council shall *review* the conceptual presentation to determine its consistency with the subdivision regulations, it is the City Council which makes the ultimate determination on this issue.

The other arguments of the Planning Commission in support of the trial court judgment are without merit. Aspen City Code § 20-5(b) is inapplicable because the Quillens' proposed development is exempt under Aspen City Code § 24-11.2(d).

 The judgment is reversed and the cause is remanded with directions to the trial court to set aside the Planning Commission's resolution denying the Quillens' application for preliminary plat approval, and to remand to the Planning and Zoning Commission for further proceedings.

TURSI and METZGER, JJ., concur.